**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**BRUCE G.,[1]**

**Plaintiff,**

**v.**

**FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 3:24-cv-10714**
**Magistrate Judge Cheryl L. Pollak**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Bruce G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

## I. PROCEDURAL HISTORY

On December 29, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging that he had been disabled since an alleged onset date of May 14, 2021. R. 81–82, 92, 102. Plaintiff's application was denied initially on September 12, 2022, and upon reconsideration on January 5, 2023. R. 110–19, 121–30. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 133–34. ALJ Brian LeCours held a telephonic hearing on October 3, 2023, at which Plaintiff, who was represented by counsel Stephen J. Ross, testified, as did an impartial vocational expert, Cherie Plante. R. 38-80.

In a decision dated November 27, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2021, the alleged onset date, through the date of the decision. R. 23–33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 7, 2024. R. 7–12. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 2, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[2] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 20. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was one month shy of 55 years of age on the alleged disability onset date. R. 83, 93. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2026. R. 25. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from May 14, 2021, his alleged onset date, through the date of the decision.[3] *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: respiratory impairment, diabetes mellitus, peripheral neuropathy, chronic fatigue syndrome,

[3] The ALJ noted that plaintiff had received earnings in the fourth quarter of 2021, but when averaged, this amount of earnings "are below the monthly substantial gainful activity threshold level for the respective year." R. 25.

chronic kidney disease, and Wegener's granulomatosis. *Id*. The ALJ also found that the Plaintiff's impairments of diabetic retinopathy and hearing disorder were "non-severe," but should be considered in formulating the residual functional capacity." R. 26. The ALJ further found that Plaintiff's medically determinable impairments of depression disorder and anxiety were not severe. R. 26–28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. R. 28–33. The ALJ, adopting the vocational expert's testimony, also found that the Plaintiff was able to perform his past relevant work as a sales agent, business service. R. 32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2021, his alleged onset date, through the date of that decision. R. 33.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 14 ("*Pl.'s Br.*"); *Plaintiff's Reply Brief*, ECF No. 21 ("*Pl.'s Reply*"). Specifically, Plaintiff contends that the ALJ erred by: 1) failing to account for Plaintiff's mild mental limitations in formulating the RFC and in failing to explain why there are no corresponding limitations in the RFC; 2) failing to assess even mild social interaction limitations at step two, which, if properly considered, may have resulted in a RFC with mental limitations that may have precluded his ability to perform his past relevant work; and 3) speculating and making conclusory findings about Plaintiff's activities of daily living when assessing the RFC. *Pl.'s Br*. at 9-24.

The Commissioner takes the position that his decision should be affirmed in its entirety

because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 20 ("*Def.'s Br.*").

## IV. PARAGRAPH B FINDINGS

Following his analysis of Plaintiff's medically determinable physical impairments, which are not at issue, the ALJ also analyzed Plaintiff's mental impairments. R. 26. Although he found that Plaintiff had the medically determinable mental impairments of depression and anxiety disorders, he determined that they caused "not . . . more than minimal limitation in the claimant's ability to perform basic mental work activities and [are] therefore nonsevere." R. 26; *see also* R. 27 (stating: "Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere" (citing 20 CFR 404.1529a(d)(1)) (emphasis in original)).

In reaching this finding, the ALJ reviewed the four broad functional areas – Paragraph B criteria – and found that with respect to the first functional area – "understanding, remembering, or applying information - Plaintiff had a mild limitation in the area of understanding, remembering, or applying information. R. 26-27. He noted that Plaintiff "endorsed difficulties with memory, understanding, and following instructions" R. 26-27 (citing Ex. 7E at 6), but then found that he was able to answer questions and provide explanations as shown by his disability application materials and hearing testimony, and was able to repeat three out of three words immediately during a consultative examination and recall three after five minutes. R. 27.

Reviewing the second functional area of interacting with others, the ALJ found no limitation. R. 27. However, as to the third and fourth functional areas, the ALJ found a "mild

limitation." *Id.* With respect to the functional area of concentrating, persisting or maintaining pace, the ALJ noted that Plaintiff claimed difficulties completing tasks and sustaining concentration, *id.* (citing Ex. 7E at 6), but he could "repeat five digits forward and four digits backward, spell "world forward and backward, and complete simple math problems in his head." *Id.* (citing Ex. 8F at 3).

With respect to the functional area of adapting or managing oneself, the ALJ noted that Plaintiff claimed difficulties handling stress, denied a history of psychiatric hospitalizations, and "conceded that he could handle changes in his routine." R. 27. In that regard, the ALJ noted that treatment records showed that Plaintiff had "conceded that medications helped," and indicated that "his mental health symptoms reduced when his financial concerns decreased." *Id.* The ALJ stated that "treatment records affirmed that the claimant's anxiety was an acute reaction to exceptional stress." *Id.* (citing Ex. 18 F at 16). The ALJ found that because Plaintiff's mental impairments caused only "mild" limitations in any of the functional areas and "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere." R. 27. In making this finding, the ALJ explicitly stated that the paragraph B criteria were not an RFC assessment, and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 28.

## VI. DISCUSSION

At step four, based on his review of all of Plaintiff's impairments, the ALJ found that Plaintiff had:

> [t]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant lift/carry 20 pounds occasionally and lift/carry 10 pounds frequently; he can stand/walk four hours in eight-hour workday; he can sit for six hours in eight-hour workday; he can occasionally balance, stoop kneel, crouch, crawl, and climb stairs but is never able to climb ladders, ropes or scaffold; he can have occasional exposure to extremes of heat, cold, humidity and wetness; he must avoid exposure to loud work environments, further defined as Noise Intensity Level 4 and above; he can have occasional exposure to pulmonary irritants such as strong fumes, odors, dust and gases; he must avoid exposure to hazardous conditions such as unprotected heights and dangerous machinery.

R. 28-29.

Plaintiff's challenge to the ALJ's decision focuses on the ALJ's failure to consider the impact of Plaintiff's mild mental limitations on his ability to work in his past employment as sales agent which was skilled SVP level 5 work. *Pl.'s Br.* at 13. As an initial argument, Plaintiff argues that under the regulations, once the ALJ has determined that the Plaintiff has a medically determinable mental impairment, and the degree of functional limitation in the four functional categories, the ALJ must account for all functional limitations resulting from the Plaintiff's impairments, both severe and non-severe in assessing the RFC. *Pl.'s Br*. at 8 (citing *Fitzpatrick v. Comm'r of Soc. Sec.*, No. 1:19- CV- 07608, 2020 WL 1872978 (D.N.J. Apr. 15, 2020)). Plaintiff argues that in this case, the applicable regulations required the ALJ to account for the Plaintiff's non-severe mental impairments in the RFC at step four. *Pl.'s Br.* at 9-10 (citing *Fitzpatrick,* 2020 WL 1872978 at *6) (remanding for further proceedings based on the ALJ's failure to analyze the impact of claimant's non-severe impairments on the RFC, noting that even though the ALJ had found claimant's mental impairments only mildly affected her functioning and were not severe, that finding is "distinguishable from a finding that Plaintiff suffered from no medically determinable mental impairments at all," and thus "may only require minor modifications to the RFC, with the end result being that Plaintiff is still capable of performing

work. . . . [but] [t]he Court and Plaintiff [] are left to guess if that would truly be the result").[4]

Plaintiff contends that because the ALJ failed to consider Plaintiff's mild mental limitations in formulating the RFC and failed to explain why no limitations were necessary, the Court is unable to determine if the ALJ's decision that Plaintiff can return to his past relevant work is supported by substantial evidence. *Id*. Plaintiff argues that although the ALJ failed to include any mental limitations in the RFC, there is support in the record for including some limitations in the RFC for his mild mental impairments.[5] *Id.* at 10. Plaintiff further argues that this error was not harmless because had the RFC accurately reflected Plaintiff's mild mental limitations, he would have been precluded from performing his past relevant work, which was skilled SVP level 5 work. *Id.* at 13–18.

**A. THE ALJ's FINDINGS**

"Findings of fact by the [Commissioner] must be accepted as conclusive by a reviewing court if supported by substantial evidence." *Cotter v. Harris*, 642, F.2d 700, 704, *3d Cir. 1981). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Id*. (citing *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); 42 U.S.C. § 405(g)). The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its

[4] The Court notes that the ALJ, in reviewing Plaintiff's non-severe physical impairments, correctly acknowledged the requirements of the regulations to consider the effects of non-severe impairments in formulating the RFC. R. 26. He stated: "In determining the residual functional capacity, [I] considered limitations and restrictions imposed by the entire range of the claimant's impairments, even those that are not 'severe,' because they may prevent a person from performing past relevant work or may narrow the range of other work he may still be able to do." R. 26.

[5] Plaintiff does not appear to challenge the ALJ's assessment that Plaintiff suffered only mild mental limitations in three out of four of the broad functional categories of the Paragraph B analysis. (*See* discussion at R. 26-27).

statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

It is well-settled that the ALJ's decision has to "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704; *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (holding that the ALJ is required to "consider and evaluate the [relevant] medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law"). The ALJ has a duty to consider all the evidence when determining a claimant's RFC, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but need only include "credibly established" limitations in the RFC. *Rutherford v. Barnhart*, 399 F.3d

546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record"). However, "[t]his discretion is not unfettered." *Id*. While the ALJ has the discretion to include a limitation that is not supported by any medical evidence "if the ALJ finds the impairment otherwise credible," "the ALJ cannot reject evidence of a limitation for an unsupported reason." *Id*.

"In step four, the ALJ must determine whether a claimant's residual functional capacity enables [him] to perform his past relevant work." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 120, 120 (3d Cir. 2000). In conducting this analysis, the ALJ must: (1) "make specific findings of fact as to the claimant's residual functional capacity"; (2) "make findings of the physical and mental demands of the claimant's past relevant work"; and (3) compare the claimant's residual functional capacity to his past relevant work to determine whether claimant is capable of performing the past relevant work. *See id.* (citing 20 C.F.R. § 404.1561; S.S.R. 82-62; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). "Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him." *Burnett*, 220 F.3d at 122 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707).

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 2982). Determination of the claimant's ability to perform past relevant work requires a careful appraisal of:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or

> corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Id*.

### B. FAILURE TO CONSIDER MILD MENTAL LIMITATIONS IN THE RFC

Plaintiff argues that in assessing his past relevant work, the ALJ must: "(1) make specific findings of fact as to the claimant's residual functional capacity; (2) make findings of the physical and mental demands of the claimant's past work; and (3) compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work." *Pl.'s Br*. at 13 (citing *Burnett* , 220 F.3d at 120; *Standowski v. Colvin*, No. 13-5663, 2015 WL 404659, at *17 (D. N.J. Jan. 29, 2015). Citing *Fitzpatrick v. Commissioner Social Security*, Plaintiff argues that remand is required because even though the ALJ found Plaintiff's mental impairments to be non-severe, the ALJ was still required to consider whether the impact of those non-severe impairments required a modification to the RFC. *Pl.'s Br*. at 10 (discussing *Fitzpatrick,* 2020 WL 1872978, at *6); *see also Curry v. Comm'r of Soc. Sec.*, No. 1:15-cv-07515, 2017 WL 825196, at *6 (D.N.J. March 2, 2017) (ordering remand where the ALJ failed to consider plaintiff's non-severe mental impairments in combination with her other impairments when assessing her RFC).

In response, the Commissioner notes that there are "'numerous cases within this Circuit [that] have found that there is no legal requirement that a mild limitation mandates a corresponding RFC limitation.'" *Def.'s Br.* at 8 (quoting *Silbaugh v. Saul*, No. 4:19-CV-1394, 2020 WL 5034140, at *9 (M.D. Pa. July 31, 2020)) (collecting cases), *report and recommendation adopted by*, No. 4:19-CV-01394, 2020 WL 5026532 (M.D. Pa. Aug. 25, 2020); (citing additional cases). Relying on those cases, the Commissioner argues that there was no

error on the part of the ALJ in declining to consider a minimal or negligible impairment in assessing the RFC. *Id.* at 7–8 (citing *Holley v. Comm'r Soc. Sec.,* 590 F. App'x 167, 169 (3d Cir 2014) (finding no error in the ALJ's failure to include mental limitations in the RFC where plaintiff "had – at most – minor mental impairments")); *D.C. v. Comm'r of Soc. Sec*., No 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) (holding that there is no need to include an in-depth analysis on mental impairments where they are found to be no more than "mild;" [t]hus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal"); *Peterman v. Berryhill,* No. 19-13751, 2019 WL 2315016, at *10 (D.N.J. May 31, 2019) (concluding that remand was not warranted where there existed "ample evidence in the record indicating that Plaintiff's mild mental impairments did not meaningfully impact her ability to function during the relevant period").

A review of the caselaw in the Third Circuit demonstrates that the Commissioner and the Plaintiff are both correct: District Court decisions on this issue are inconsistent and to date, the Court of Appeals has not provided definitive guidance. In *Perez-Vega v. Kijakazi,* No. 22 CV 3994, 2023 WL 3620747, at *3 (E.D. Pa. May 24, 2023), the court addressed this inconsistency, noting: "It is not clear whether — or in what circumstances — an ALJ is required to discuss mild limitations caused by non-severe mental impairments in assessing a claimant's RFC. No Third Circuit case decides the issue." *Id.* at *3. The court resolved the conflict in that case by stating: "However, in order to decide whether to grant relief in this case, it is not crucial to decide [which line of cases is correct]. If the ALJ erred in failing to follow a rule, it must still be determined whether or not the error warrants remand. Remand is not necessary where it would not affect the outcome of a case." *Id*. at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, (3d Cir. 2005)); *see also id*. at *3, 6–7 (concluding that such error was harmful because the ALJ failed to

explain why the conflicting report of a consulting medical examiner had not been considered where the claimant had pointed out how her limitations affected her ability to perform past relevant skilled work); *Jennifer V. v. Comm'r of Soc.,* No. 20-17949, 2022 WL 1044966, at *5 (D.N.J. Apr.7, 2022) (remanding where the ALJ found the claimant's mental impairments non-severe at step two and stated in conclusory fashion that the RFC reflected the degree of limitations found in the mental function analysis, but, noting that at step four, "the RFC analysis contains no reference to Plaintiff's mental impairments at all" and, "[i]n the absence of any reference to Plaintiff's mental impairments in the RFC analysis, the Court is not satisfied with the ALJ's conclusory statement at step two that she considered them in the RFC analysis"); *Hicks v. Colvin*, No. 15-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) (stating: "Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding").

The court in *Perez-Vega* analyzed the various decisions finding both ways and noted that often the cases finding error in the ALJ's failure to consider the impact of a non-severe mental impairment arise when there is some reason to think that the mild limitations would impact a claimant's ability to perform past relevant work. *Perez-Vega*, 2023 WL 3620747, at *4–6.[6] (citing *Meersand v. Kijakazi,* Civ. A. No. 20-1084, 2021 WL 5003331 at *2–3 (E.D. Pa. Oct. 28, 2021) (finding that "even mild limitations in the relevant domains of mental functioning must be

[6] In a footnote, the court in *Perez-Vega* reviewed a number of the decisions where no error was found, distinguishing the decision in *Holley v. Comm'r of Soc. Sec.,* 590 F. App'x 167 (3d Cir. 2014), relied upon by the Commissioner here, by noting that the opinion itself clearly stated that it had no precedential value, and that, in any event, the RFC contained a restriction to "unskilled" labor sufficient to capture the claimant's limitations. *Perez-Vega*, 2023 WL 3620747, at *3 n.1 (stating that *Holley* "does not have any precedential value").

included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon" and that the ALJ therefore erred in failing to consider plaintiff's mild mental limitations in determining that she could perform past relevant work as an order clerk, at the semi-skilled level)). *See also Rosario v. Kijakazi,* Civ. A. No. 21-15609, 2022 WL 2714010 (D.N.J. July 13, 2022) (finding that the ALJ committed error in finding that the claimant was not disabled because she could return to her past relevant work, without addressing the impact of claimant's non-severe, mild mental limitations on her RFC or her past work as an administrative assistant or secretary); *Metelli v. Berryhill,* Civ. A. No. 16-6094, 2017 WL 2570913 (E.D. Pa. May 26, 2017), *approved and adopted,* 2017 WL 2547288 (E.D. Pa. June. 13, 2017) (finding that the requirement to consider even mild mental limitations "is especially important in cases involving claimants whose past relevant work was a skilled occupation" because "'[c]ourts have found that even minimal deficits in [intellectual] functioning could impact [a claimant's] ability to successfully perform the [skilled] occupation'") (quoting *Moore v. Colvin*, 239 F. Supp.3d 845, 861 (D. Del. Mar. 8, 2017) (quoting *Harmon v. Astrue,* No. 10–6781, 2012 WL 94617 at *2 (E.D. Pa. Jan. 11, 2012) (remanding for failure to include mild mental limitations in the RFC, where the ALJ found claimant could perform her past relevant skilled work as a secretary) (internal quotation marks omitted)).

The court in *Perez-Vega* further noted that in *Leichter v. Kijakazi,* Civ. A. No. 20-6147, 2021 WL 5904619 (E.D. Pa. Dec. 13, 2021), the court remanded the case for consideration of mild and moderate mental limitations even though the ALJ found the claimant's mental impairments to be non-severe. Citing *Metelli* and other relevant caselaw, the judge concluded:

> Thus, whereas non-severe mental impairments do not significantly limit a claimant's ability to do basic work activities . . . the ability to perform skilled work could be affected by even non-severe mental impairments. . . . In any event, the ALJ did not make an explicit finding that Plaintiff's limitations were so minimal

> that they would not limit Plaintiff's ability to perform skilled work, nor is it clear that there is other work Plaintiff could perform given her limitations, age, education, and work history.

*Id.* at *9.

In the present case, the ALJ found that Plaintiff would be able to perform his past skilled position as Sales Agent, Business Services. R. 32. A Sales Agent, Business Services, is defined in the Dictionary of Occupational Titles ("DOT") as:

> 251.357-010 SALES AGENT, BUSINESS SERVICES
>
> Sells business service, such as food-vending, trading stamps, detective, armored truck, telephone-answering, linen supply, and cleaning service: Develops list of prospective customers by studying business and telephone directories, consulting business associates, and observing business establishment while driving through sales territory. Reviews orders for ideas to expand services available to present customers. Calls on prospects to explain features of services, cost, and advantages. Writes orders and schedules initiation of services. Confers with customers and company officials to resolve complaints. May collect payments on accounts. May be designated according to service sold as Sales Agent, Food-Vending Service (wholesale tr.); Sales Agent, Protective Service (business ser.); Sales Agent, Trading Stamps (business ser.).

*Dictionary of Occupational Titles* 251.357-010 (4th ed. rev. 1991) (providing further that, *inter alia*, this is a light exertional position with reasoning level 4, math level 3, and SVP level 5).

Plaintiff contends that even mild mental limitations are critical for the performance of highly skilled SVP level 5 work on a full-time basis, which is what his past work as Sales Agent, Business Services entailed. *Pl.'s Br.* at 17. Plaintiff notes that the Program Operations Manual System (POMS) "recognizes that often in semiskilled and skilled work 'there is an increasing requirement for understanding and memory and for concentration and persistence, e.g., the ability to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others.'" *Id.* at 13 (quoting POMS DI 25020.010(B)(4)(b)).

Plaintiff points to the record evidence showing that on June 8, 2020, he was referred "to psychiatry with an anxiety diagnosis, and on December 11, 2020, James Marlys, M.D. assessed "severe anxiety." *Pl.'s Br.* at 11 *(quoting* R. 364, Ex. 4F; R. 401, Ex. 6F). On June 16, 2022, Peter Reavey, Ph.D.'s records show "psych counseling 2x/month," R. 418, Ex. 7F, with progress notes from July 29, 2022, reporting "frequent anxiety attacks," R. 471, Ex. 13 F, and a prescription for lorazepam for anxiety. R. 517, Ex. 15F. Plaintiff points to progress notes from May 5, 2023, indicating that "Plaintiff was advised of certain tendencies such as his 'need to be right above all else and his need to count things,' unofficial autism diagnosis, and Plaintiff's history of social difficulties due to not understanding cues." *Pl.'s Br.* at 11-12 (quoting R. 867, Ex. 20F).

Plaintiff also highlights that on June 2, 2023, progress notes indicate that Plaintiff "[r]ecently saw psychiatrist. Started on Buspar and Zoloft," and that Plaintiff showed "[a]ctive" anxiety. *Pl.'s Br.* at 12 (quoting R. 808, Ex. 19F). Plaintiff further points to progress notes from several weeks later on June 20, 2023 that report "anxiety/depression-symptoms- emotional lability, high irritability, anxiety, social withdrawal, stomach cramps." R. 839, Ex. 20F.

Plaintiff contends that while the ALJ briefly discussed opinions relating to Plaintiff's psychological issues at step four, the discussion was focused on the "severity" of the impairments and was not an analysis of the limitations caused by these impairments. *Pl.'s Br*. at 12.[7] Citing *Rosario v. Kijakazi*, 2022 WL 2714010 (D.N.J. July 13, 2022), Plaintiff argues that in

---

[7] At step four, the ALJ considered the opinions of Dr. Alan Harris and Dr. Carmen Pineiero, the state agency reviewing psychological consultants, who found Plaintiff's mental impairments to be "*not severe*." R. 31 (emphasis added). The ALJ noted that although neither examined the Plaintiff and they "lacked access to the complete record, their opinions are generally persuasive because they are consistent with a mental status examination that revealed that he was able to repeat and remember digits immediately and after delay, and compute simple problems, among other findings[.]" R. 31–32 (citing Ex. 8F at 3). The ALJ further noted that Plaintiff had not

this case, "mild limitations in understanding/remembering/applying information, or in concentration, persistence, or pace, or adapting/managing" are particularly critical because the vocational expert found that the RFC would allow Plaintiff to perform his past work. *Pl.'s Br.* at 15; *see also id.* at 14 (citing *Curry v. Comm'r of Soc. Sec.*, No. 15-07515, 2017 WL 825196, at *4 (D.N.J. Mar. 2, 2017) (remanding where the ALJ made only a "passing reference" to the evidence relating to claimant's mental health, and noting that the impact of those limitations on the ability to perform past relevant work as an administrative assistant "may be *de minimus,* or only require minor modifications of Plaintiff's RFC," but nonetheless needed to be addressed by the ALJ); *Standowski v. Colvin*, No. 13-5663, 2015 WL 404659, at *17 (D.N.J. Jan. 29, 2015) (holding that the failure to account for mild limitations in concentration, persistence, or pace is critical where the ALJ found the claimant to be capable of performing her past relevant work in a skilled position)).

The Commissioner argues that the ALJ provided an adequate explanation in that he stated that medication helped Plaintiff's symptoms and that his anxiety, which records attributed to "exceptional stress," was reduced when "external stressors such as financial concerns" were reduced. *Def.'s Br.* at 6-7. However, the ALJ made these comments in connection with his step two analysis, not with his step four RFC assessment, and indeed, he explicitly stated that the paragraph B criteria were "not an RFC assessment," and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 28.

---

"received significant specialized mental health treatment and denied a history of psychiatric hospitalization[.]" R. 32 (citing Ex. 8F at 2).

The ALJ's failure to include that "more detailed assessment" in his step four analysis is particularly problematic given the testimony of the vocational expert. At the hearing, the vocational expert testified, in response to a hypothetical based on an RFC essentially equivalent to the one in the ALJ's decision, that if a limitation were added for off-task work due to symptoms, or the need for unscheduled breaks more than 15% of the time, then there would be no jobs in the national economy. R. 77. The expert further stated that if a limitation was added for unscheduled absences more than 2 times per month, there would be no jobs. R. 78. Furthermore, the expert opined that if a limitation was added for "unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time," that limitation would preclude all past work. R. 78. As the vocational expert noted, any restriction in the RFC for "work requiring little or no judgment" or a limitation for off-task time would preclude Plaintiff from his past work as a Sales Agent, Business Services. R. 77, 78. Despite the arguable significance of the vocational expert's opinion in this regard, the ALJ did not discuss or address the potential impact of these limitations or of any of Plaintiff's mental impairments in reaching his finding in step four. Even though the ALJ found Plaintiff's mental impairments to be non-severe, he did not find them to be non-existent, and as the court in *Metelli,* 2017 WL 2570913, found, "even minimal deficits in [intellectual] functioning could impact [a claimant's] ability to successfully perform the [skilled] occupation."'" (citations omitted).

The ALJ cited to Dr. Reavey's records, noting that Plaintiff had "not received significant specialized mental health treatment and denied a history of psychiatric hospitalization[.]" R. 32 (citing Ex. 8F at 2; R. 421). However, the ALJ's discussion in that regard related to the severity of Plaintiff's mental impairments. Significantly, nowhere in this discussion—or at any point in

his decision—does the ALJ explain the impact of Plaintiff's mild mental impairments on his functional ability to perform his skilled past relevant work. *See id*.

Moreover, in finding that Plaintiff had "not received significant specialized mental health treatment and denied a history of psychiatric hospitalization[,]" the ALJ fails to acknowledge Dr. Reavey's note that Plaintiff was "followed by a PCP and a number of specialists who monitor" his medication, including, *inter alia*, Buspar (known generically as Buspirone) and Lorazepam (brand name Ativan), which were used to treat Plaintiff's anxiety. R. 32, 421 (reflecting Dr. Reavey's notation that Plaintiff took Buspar and Lorazepam), 517 (reflecting, *inter alia*, that Plaintiff takes Lorazepam for anxiety), 528 (reflecting, *inter alia*, that Plaintiff's medication included, *inter alia*, Buspirone, which was used to treat his anxiety). Moreover, the ALJ does not explain why he discounted or considered insignificant this mental health treatment, *i.e.*, medication and mental health counseling every two weeks to treat Plaintiff's anger issues, panic attacks, irritability, and problems dealing with people. R. 32.

As previously discussed, the ALJ specifically found that Plaintiff was mildly limited in three of the four broad areas of mental functioning under paragraph B criteria, *i.e.*, mildly limited in his ability to understand, remember, or apply information; concentrate, persist or maintain pace; and adapt or manage oneself. R. 26–27. These limitations may be relevant given the nature of the skilled work required by Sales Agent, Business Services, which includes, *inter alia*, "[d]evelops list of prospective customers by studying business and telephone directories," "consulting business associates, and observing business establishment while driving through sales territory," "[r]eviews orders for ideas to expand services available to present customers[,]" as well as "[c]alls on prospects to explain features of services, cost and advantages," and "[c]onfe[ring] with customers and company officials to resolve complaints." *Dictionary of*

*Occupational Titles* 251.357-010 (4th ed. rev. 1991). Since the ALJ did not address these issues in determining that Plaintiff could perform past relevant skilled work, the Court has no way to determine what the ALJ's findings would be in this regard or whether there was sufficient support in the record to conclude that these mild mental limitations would have *de minimis* or no impact on Plaintiff's ability to perform his past skilled work.

Accordingly, while the caselaw in the Third Circuit may be unsettled as to whether remand is always required whenever an ALJ fails to address the impact of mild mental limitations in formulating the RFC, the Court finds that it is unnecessary to reach that issue here because, based on the present record, the Court is unable to conclude that the ALJ's error in failing to explain his reasons for providing no limitations for Plaintiff's mild mental impairments in the RFC is harmless error. In this case, the ALJ's failure to address the mental limitations leaves the Court unable to determine what led the ALJ to his determination that no mental limits were required in the RFC, without engaging in the work of the ALJ. *Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."

By acknowledging at step two the need for a "more detailed assessment" at step four and then failing to discuss Plaintiff's mental limitations at all in discussing the RFC, the ALJ failed to provide a "logical bridge" between the evidence and his decision. *See Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-

03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("'An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.'") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.[8]

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: September 9, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

[8] Plaintiff also argues that the ALJ erred at step two in failing to assess even mild limitations in his ability to interact with others and erred when considering his activities of daily living when assessing the RFC. However, having found a basis to remand this action, the Court does not reach Plaintiff's other arguments. *See Stephen S. v. Comm'r of Soc. Sec*., No. 24-CV-10055 (CPO), 2025 WL 2962465, at *6 (D.N.J. Oct. 20, 2025) ("Because the Court concludes that this matter must be remanded for further proceedings based on the ALJ's denial of Plaintiff's right to cross-examine Dr. Lazarus, the Court need not reach Plaintiff's remaining arguments on appeal."); *Charran v. Saul*, 509 F. Supp. 3d 80, 87 n.3 (D.N.J. 2020) ("Because the Court remands the action on this basis, the Court declines to address Plaintiff's other arguments raised in the merits briefs, ECF Nos. 16, 17, 18.").